**Nancy A. ZWALESKY, Plaintiff,**

v.

**MANISTEE COUNTY et al.,**
**Defendants.**

**No. 1:89–CV–794.**

United States District Court,
W.D. Michigan, S.D.

Aug. 16, 1990.

William N. Grant, Jennings & Grant, PC, Manistee, Mich., for plaintiff.

Christopher J. Johnson, Cummings, McClorey, Davis & Acho, PC, Livonia, Mich., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

### INTRODUCTION

Plaintiff Nancy A. Zwalesky brings this action against Manistee County and the Manistee County Sheriff's Department. She also sues Ed Haik, the Manistee County Sheriff, Art Street, the Undersheriff, John Modjeski, a supervisor at the Manistee County Jail, and several deputy sheriffs and corrections officers. The plaintiff alleges that the defendants are responsible under Title 42 United States Code Section 1983 for the suicide of her husband which occurred while he was a detainee at the Manistee County Jail. She also seeks recovery on a variety of state law claims as well. Pending before the Court are the various defendants' motions for summary judgment on all causes of action contained in the complaint.

### BACKGROUND

On August 27, 1988, plaintiff Nancy Zwalesky called the Manistee County Sheriff's Department due to a domestic disturbance with her husband. She informed the dispatcher that she had been beaten by her husband and would like to file a complaint. She further indicated that she would be at the home of a neighbor. Defendant Kowalkowski arrived at the neighbor's home at around 5:30 P.M. to take her complaint.

A short time later, defendants Herremans and Kowalkowski approached the Zwalesky residence and knocked on the front door. The decedent, in a state of drunkenness, came to the door and stepped out onto the porch to talk with defendant Kowalkowski. He was promptly placed under arrest for spousal abuse and transported to the Manistee County Jail by defendant Herremans.

By all accounts, the decedent was not exactly complacent while being transported to the jail. The decedent repeatedly swore and yelled at the transporting officer and threatened to kill various relatives, his wife and himself. Moreover, once they reached the jail, the decedent began to repeatedly bang his head on the protective screen separating the front and back seats of the patrol car.

As a result of the decedent's conduct, defendant Modjeski decided not to utilize the standard procedure for processing incoming inmates. Rather, due to his inebriation, defendant Modjeski ordered defendant McLellan, a corrections officer, to place the decedent in the jail's detoxification cell. According to the plaintiff, this unit did not comply with various Michigan regulations addressing the design of detoxification cells. Approximately ninety minutes later, defendant Golembiewski, another corrections officer, found the decedent hanging by his shirt from a conduit pipe located in the cell. An investigation by the medical examiner of Manistee County confirmed the cause of his death as asphyxiation due to strangulation.

### STANDARD OF REVIEW

Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Sons*, 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the non-moving party, a reasonable factfinder could return a verdict for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a materi-

al issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this has been done, the non-moving party must come forward with specific facts showing that there is a material issue of fact on an issue which the non-moving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

## DISCUSSION

### 1. QUALIFIED IMMUNITY

 All of the individual defendants that had contact with the decedent on the day of his death assert that they are immune from suit in the present action due to the doctrine of qualified immunity. Governmental officials performing discretionary functions are shielded from liability for civil damages so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A constitutional right is clearly established if in the light of pre-existing law the unlawfulness of the conduct would be apparent to a reasonable official. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). An official action is not protected by qualified immunity simply because previous law has not held the questioned action to be unlawful. *Mitchell v. Forsyth,* 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985). Rather, the crucial inquiry for a reviewing court is whether a reasonable official reviewing the pre-existing law and applying it to the circumstances surrounding the questioned incident would have readily concluded that his conduct was unlawful.

*Creighton,* 483 U.S. at 640–41, 107 S.Ct. at 3039–40.

Although qualified immunity is somewhat akin to an affirmative defense, the defendant does not bear the burden of establishing that his alleged conduct did not violate clearly established law. *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987). Rather, the plaintiff must allege facts that describe a violation of clearly established right of which a reasonable public official would have known. *Kennedy v. City of Cleveland,* 797 F.2d 297, 299 (6th Cir.1986). Therefore, the plaintiff must include in his complaint all of the factual allegations necessary to sustain a conclusion that the defendant violated clearly established law. *Dominque,* 831 F.2d at 676. If a plaintiff fails to meet this requirement, the reviewing court must give the plaintiff an opportunity to come forward with additional allegations or facts that show a violation of clearly established law. *Id.*

It appears to the Court that the plaintiff is seeking to recover under Section 1983 on two separate theories.[1] First, she alleges that the failure of the defendants to properly identify the decedent's suicidal tendencies was an unconstitutional deprivation of medical care. Second, the plaintiff asserts that the decedent was denied his substantive due process right to be free from unsafe confinement. *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

 In accordance with the due process clause, a pretrial detainee may not be punished because he has not been adjudicated guilty in accordance with due process of law. *Bell v. Wolfish,* 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979). Punishment can take many forms, including the deprivation of medical care. *Danese v. Asman,* 875 F.2d 1239, 1243 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); *Roberts v. City of Troy,* 773 F.2d 720, 722 (6th Cir.1985). Since a pretrial detainee is enti-

---

1. Since state statutes and regulations do not create federal constitutional rights, *see Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984), the alleged failure of the defendants to comply with Michigan regulations concerning the design of detoxification cells does not give rise to a Section 1983 cause of action.

tled to at least the same level of constitutional protection as a convicted prisoner,[2] courts have consistently reviewed their allegations concerning medical care under the eighth amendment cruel and unusual punishment standard used to evaluate medical claims by prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Roberts*, 773 F.2d at 722. Therefore, the Court must determine if the conduct of the five individual defendants that had contact with the decedent on August 27, 1988 is tantamount to a deliberate indifference to the medical needs of the decedent. *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291.

■ When evaluating a defendant's assertion that he is entitled to qualified immunity, a reviewing court must first identify the particular right alleged to have been violated. A plaintiff cannot avoid the rule of qualified immunity by simply pleading a generalized due process right. *Creighton*, 483 U.S. at 639, 107 S.Ct. at 3038. The "right" that is truly at issue in the present case is the right of a detainee to be screened for suicidal tendencies and to have steps taken that would prevent him from taking his own life. Thus, for purposes of resolving the defendants' claims of qualified immunity, this Court must determine whether a reasonable official would conclude that the failure to include such procedures as part of the practices used to process incoming detainees would have readily concluded that his conduct was a deliberate indifference to the medical needs of a detainee. *Creighton*, 483 U.S. at 640–41, 107 S.Ct. at 3039–40; *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291.

The Court believes that these defendants are entitled to qualified immunity on the plaintiff's "medical needs" claim. The Court notes that *Estelle* dealt with a claim that prison officials exhibited deliberate indifference to a patient who requested medical care. *Estelle*, 429 U.S. at 104–05, 97 S.Ct. at 291–92. There is a world of difference between ignoring someone who is injured and requests medical help and correctly screening prisoners to determine what physical or psychological problems afflict them at the time they are incarcerated. The former rises to the level of a constitutional tort; the latter may only rise to the level of negligence or medical malpractice. Moreover, the Sixth Circuit, with heavy reliance on the *Estelle* decision, has specifically held that the general constitutional right to medical care is not sufficient by itself to establish a clear constitutional right to be correctly screened by prison officials for psychological problems. *Danese*, 875 F.2d at 1244. Therefore, defendants Golembiewski, Herremans, Kowalkowski, McLellan and Modjeski are entitled to qualified immunity on this claim.[3]

■ Plaintiff's second claim is premised on the substantive due process right to be confined in a safe environment. *Youngberg*, 457 U.S. at 315–16, 102 S.Ct. at 2457–58. However, a standard of review that is very deferential to governmental officials is to be applied to claims that this right has been violated. Accordingly, so long as professional judgment was exercised as to the conditions of confinement, there is no liability under the due process clause. *Id.* at 321–22, 102 S.Ct. at 2461; *Danese*, 875 F.2d at 1243.

■ Like her claim alleging indifference to the decedent's medical needs, this claim is also in the form of a generalized due process right. Beyond the statement that involuntarily committed individuals have a right to safe confinement, *Youngberg* does not offer any guidance concerning the duty of a prison official to detect and prevent

---

**2.** Whether the fourth amendment serves as an additional source of protection for pretrial detainees is still an open question. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989).

**3.** A different result may be required if a plaintiff could show that state officials were medically or psychologically certain that an incarcerated prisoner or pre-trial detainee would attempt suicide and took no action, or if a plea for psychological help was ignored by state officials. *See Danese*, 875 F.2d at 1244. There is no evidence before the Court in the present case indicating that the individual defendants knew the decedent was certain to commit suicide during his incarceration or that they ignored a request by him for psychological help.

suicide attempts by inmates. *Danese*, 875 F.2d at 1244. Since *Youngberg* does not suggest that the exercise of professional judgment would require prison officials to make accommodations for potential suicide attempts, the Court believes that a reasonable official could conclude that the failure to include such procedures as part of the practice used to process incoming detainees would not violate clearly established constitutional rights. *Creighton*, 483 U.S. at 640–41, 107 S.Ct. at 3039–40. Accordingly, the Court holds that defendants Golembiewski, Herremans, Kowalkowski, McLellan and Modjeski are entitled to qualified immunity on this claim as well.[4]

## 2. RESPONDEAT SUPERIOR

In her complaint, the plaintiff alleges that defendants Haik, Street, Modjeski and the governmental entities failed to adequately train and supervise the various officers that came into contact with the decedent on the day of his death. Having determined that the individual defendants in the present case have not violated any clearly established constitutional rights, the plaintiff's claims against the governmental entities and the individual defendants in their official capacities can be readily resolved.

█ A municipality may be liable under Section 1983 only where the municipality itself by either policy or custom causes the constitutional violation at issue. *E.g., Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). A policy or custom exists whenever policymakers have made a deliberate choice to follow a particular course of action. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986) (plurality opinion). The failure to adequately train personnel will be considered a policy or custom only if the failure to train amounts to a deliberate indifference on the part of the municipality to the rights of persons with whom the officials come into contact. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989). Moreover, the failure to train must be a proximate cause of the ultimate injury suffered by the plaintiff. *Id.* 109 S.Ct. at 1206.

Given the stringent burden of proof that must be met in order to hold a municipality liable for its failure to train, the Court believes that the plaintiff must first establish that individual governmental officials were responsible for the deprivation of a clearly established constitutional right. *Cf. City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (the infliction of a constitutional injury by a governmental official is a prerequisite for establishing the existence of liability on the part of either supervisory personnel or a municipality). To the Court, the term "deliberate indifference" connotes a conscious and intentional decision on the part of a policymaker to ignore the clearly established rights of others. *Harris*, 109 S.Ct. at 1205 n. 10. Given that understanding of "deliberate indifference," it would be irrational to hold that a municipality has shown a deliberate indifference to the rights of its citizens by failing to train its personnel when its officers have violated no clearly established right. *Danese*, 875 F.2d at 1245. Therefore, the two governmental entities are entitled to be dismissed from this action.

█ Moreover, the three supervisory personnel sued in this action should be dismissed as well. A supervisor may be liable for the unconstitutional acts of a subordinate if there is a complete failure on the part of the superior to train or the provided training is so reckless or grossly negligent that future misconduct is almost inevitable and a causal relationship between the failure to train and the conduct of the subordinates exists. *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.),

---

**4.** Defendant Street has also moved for dismissal on the grounds of qualified immunity. However, since there is no evidence before the Court that would suggest that he was even involved in the dispute with the decedent, he can be found liable under Section 1983 only if a lack of supervision or training on his part led to a constitutional deprivation. Therefore, the Court will not address the merits of his qualified immunity defense.

*cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982).

As with municipal liability, the Court believes that a plaintiff must establish that individual governmental officials were responsible for the deprivation of a clearly established constitutional right as a prerequisite for the existence of liability on the part of supervisors. *Danese,* 875 F.2d at 1245. Since the subordinates in the present case did not deprive the decedent of a clearly established right, their supervisors cannot be liable for improper training.

### 3. STATE CLAIMS

The plaintiff has also alleged several state law actions in addition to her civil rights claim. Since there is no allegation of diversity jurisdiction and all federal claims have been dismissed, the Court believes that it should not exercise jurisdiction over these claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Therefore, they are dismissed without prejudice.

### CONCLUSION

For the reasons stated above, the motions for summary judgment on the plaintiff's Section 1983 claim are granted and the state law claims are dismissed without prejudice.