Diane M. WHALEY, et al., Plaintiffs,

v.

COUNTY OF SAGINAW,
et al., Defendants.

No. 92–CV–10103–BC.

United States District Court,
Eastern District of Michigan,
Northern Division.

June 14, 1996.

---

John W. Grigg, Kenneth Wright, Bay City, MI, for Plaintiffs.

Kenneth G. Galica, Bay City, MI, for Defendants.

*OPINION AND ORDER GRANTING IN PART DEFENDANTS SAGINAW COUNTY, GOLDBERGER, AND VARNER'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND DENYING SAME IN PART*

CLELAND, District Judge.

### I. Introduction

This matter is before the court on defendant County of Saginaw's, Dr. Goldberger's, and Dr. Varner's (collectively, "defendants") motion to dismiss or for summary judgment.

The facts in this case are straightforward and the pertinent facts are identical in each of the cases consolidated under the caption above. Defendant Hines performed autopsies on plaintiffs' decedents pursuant to the request by Saginaw County's chief medical examiner. The chief medical examiner at the time of the autopsies of plaintiffs' decedents Miller, Whaley, Tunney and Jones was Dr. Goldberger; he and Saginaw County are the defendants in the actions related to these autopsies.[1] Dr. Varner succeeded Dr. Goldberger and was chief medical examiner at the time of the Saunders autopsy; he and Saginaw County are defendants in the Saunders action.[2] Defendant Hines hired defendant Armando Herrera, now deceased, as a diener, or assistant. Defendant Herrera also owned and operated the Central Michigan Eye Bank and Tissue Center and was a certified enucleator, meaning that he could remove eyes and corneas without damaging them. Part of defendant Herrera's duties as diener included preparing the body for the autopsy and sewing up the body after the autopsy. Plaintiffs sue because the corneas of their deceased relatives were removed without their permission. Plaintiffs are the parents and siblings of the decedents.

Michigan's Anatomical Gifts Act permits the nonconsensual removal of corneas as long as no objection is known. The law provides in pertinent part:

(1) In any case in which an autopsy is to be done by a county medical examiner or a

---

1. The individual case numbers are as follows: *Whaley v. County of Saginaw,* 92–CV–10103–BC; *Jones v. Saginaw County,* 92–CV–10266–BC; *Tunney v. Saginaw County,* 92–CV–10267; and *Miller v. Saginaw County,* 92–CV–10281–BC.

2. The case number for the Saunders action is 92–CV–10437–BC.

county medical examiner causes an autopsy to be done, the cornea of the deceased person may be removed by a person authorized by the county medical examiner.

(2) Removal under subsection (1) may be made only under the following circumstances:

. . .

(b) The county medical examiner does not have knowledge of an objection by the next of kin of the decedent to the removal of the cornea. . . .

M.C.L.A. § 333.10202. The Sixth Circuit, in *Whaley v. County of Tuscola,* 58 F.3d 1111 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 476, 133 L.Ed.2d 404 (1995), held that the nonconsensual removal of the deceaseds' corneas violated the due process clause and reversed this court's grant of defendants' motion to dismiss. The case is here on remand to determine whether plaintiffs can recover under § 1983 and state law for violations of this right.

The only remaining claims against the instant defendants are a § 1983 claim and a state law tort claim. Preliminarily, defendants assert that Dr. Varner is no longer a party to the action because plaintiffs did not appeal his earlier dismissal. Defendants maintain that plaintiffs filed their actions outside of the statute of limitations. Third, defendants assert that the § 1983 claims against the county, and Dr. Goldberger and Dr. Varner in their official capacities should be dismissed because plaintiffs have not shown that a municipal policy or custom deprived them of a constitutional right.[3] Fourth, they argue that the state law claims should be dismissed because of the Michigan governmental immunity doctrine. Finally, defendants adopt by reference the standing argument posited by defendant Hines in his motion for summary judgment as to all plaintiffs except Sharrard, seeking to limit standing only to the closest kin.

## II. Standard

◼ Because the parties have submitted evidence outside the pleadings, the court will treat the motions to dismiss or for summary judgment as motions for summary judgment. Under Fed.R.Civ.P. 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The existence of some factual dispute does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material.

◼ The burden placed upon the movant for summary judgment is to show that the non-moving party has failed to establish an essential element of his case upon which the non-moving party would bear the ultimate burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. But the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552–53. Once the moving party meets this burden, the burden passes to the non-moving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element necessary to his or her case with respect to which he or she bears the burden of proof. *Id.* at 323, 106 S.Ct. at 2552–53. The non-moving party must show that there is sufficient evidence for a jury to return a verdict in its favor,

---

**3.** Plaintiffs originally maintained that Dr. Goldberger and Dr. Varner were liable under § 1983 in their individual capacities. Plaintiffs concede that Dr. Goldberger and Dr. Varner are entitled to dismissal of the claims against them in their individual capacities due to application of the doctrine of qualified immunity. *Pl.Br.* at 3.

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989), *i.e.,* that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. *Id.* at 1476. The non-moving party must present affirmative evidence on critical issues. *Id.* at 1477.

### III. Discussion

#### A. Dr. Varner as a Party

■ Defendants maintain that Dr. Varner is no longer a party because he was not included in the list of defendants in the notice of appeal. Defendants cite *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), for the proposition that the failure to name a party on the notice of appeal is a jurisdictional bar to review. However, for reasons that follow, defendants do not have a persuasive argument.

Rule 3(c) of the Federal Rules of Appellate Procedure requires that the notice of appeal include the names of "the party or parties taking the appeal". There is no such requirement relating to the naming of all appellees. Defendants' citation to *Torres* is inapposite, because in that case, one of the plaintiffs/appellants was not named in the notice of appeal. Rule 3(c) clearly applies in such a situation.

The Sixth Circuit has dismissed an argument identical to defendants' in clear terms. The court has stated:

> Mrs. Crawford first argues that this Court does not have jurisdiction over the Trustees because the children did not name them as appellees on the notice of appeal. This argument has no merit. Federal Rule of Appellate Procedure 3(c), only requires that the notice of appeal "specify the party or parties taking the appeal," and does not require an appellant to name appellees.

*Crawford v. Roane,* 53 F.3d 750, 752 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1354, 134 L.Ed.2d 522 (1996). *See also International Union, United Automobile,* *Aerospace & Agricultural Implement Workers of America v. United Screw & Bolt Corp.,* 941 F.2d 466, 469–71 (6th Cir.1991). Accordingly, defendants' argument is likewise without merit, and Dr. Varner remains a party to this suit.

#### B. Statute of Limitations

Defendants Saginaw County and Dr. Varner do not raise the statute of limitations in their motion for summary judgment as to plaintiff Saunders. This argument applies to the motions by Defendants Saginaw County and Dr. Goldberger with respect to plaintiffs Whaley, Miller, Tunney and Jones.

■ Defendants argue that plaintiffs' actions are barred by the three year statute of limitations that applies to injuries to persons or property. M.C.L.A. § 600.5805, M.S.A. § 27A.5805(8). Defendants further contend that the cause of action accrued, at the latest, when the plaintiffs' deceaseds were buried. Defendants maintain that the "discovery" rule does not apply because the cause of action is rooted in negligence theories. Plaintiffs contend that the statute of limitations did not begin running until there was an "actionable wrong"—defined by plaintiffs as occurring when the "injuries have first become apparent ... [and] when the Plaintiff knows of the act which caused his injury and has good reason to believe that the act was improper". *Miller Br. (7/6/93)* at 31. Accordingly, plaintiffs argue, their cause of action did not accrue until they discovered that their decedents were buried without their corneas. Additionally, plaintiffs maintain that the two year statute of limitations from the date of discovery of a claim that has been fraudulently concealed applies.[4]

The applicable Michigan statute of limitations governs both the state law claims and the § 1983 claims. *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The statute of limitations that the parties agree governs this action is the action for injuries to property.

---

4. Plaintiffs admit that they have not alleged fraudulent concealment, but do aver that such facts can be inferred from the complaints.

The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

M.C.L.A. § 600.5805(8).

■ However, this section does not indicate when the cause of action accrued for purposes of calculating the three year limitation. The essence of plaintiffs' claims against these defendants is that they negligently permitted defendants Hines and Herrera to remove corneas from plaintiffs' decedents without plaintiffs' permission. The applicable accrual statute provides that "[t]he claim accrues · at the time ... the wrong upon which the claim is based was done regardless of the time when damage results." M.C.L.A. § 600.5827. Michigan courts have held that

> "wrong," as used in the accrual provision, refers to the date on which the plaintiff was harmed by the defendant's negligent act, not the date on which the defendant acted negligently. *Connelly v. Paul Ruddy's Equipment Repair & Serv. Co.*, [388 Mich. 146,] 200 N.W.2d 70 (Mich.1972). Otherwise, a plaintiff's cause of action could be barred before the injury took place.

*Stephens v. Dixon*, 449 Mich. 531, 536 N.W.2d 755, 756 (1995). In negligence actions, actions do not accrue "until the injury occurs or until the plaintiff discovers or should have discovered the injury." *Callaghan's Mich.Civ.Jur.*, Limitations of Actions § 83. *See also Stephens*, 536 N.W.2d at 758 ("simple negligence cause of action accrues when a prospective plaintiff first knows or reasonably should know he is injured."); *Horvath v. Delida*, 213 Mich.App. 620, 540 N.W.2d 760 (1995).

Applying this reasoning, the three year limitations period is not measured from the time of burial, because plaintiffs did not know at that time, nor is there any indication that they should have known, that their relatives had been buried without their corneas. Once they received the autopsy report or otherwise found out that their relatives had been buried without all of their body parts, the cause of action accrued. Plaintiff Miller dis-

covered on or about May 1, 1992; plaintiff Jones discovered on or about October 29, 1991; plaintiff Whaley knew on or about August 6, 1991; plaintiff Tunney discovered on or about August 29, 1991. Plaintiff Whaley filed her complaint in March, 1992; the remaining plaintiffs filed in June and July, 1992. All of these are well within the statute of limitations.

## C. Standing

■ Defendants argue that not all of the plaintiffs have standing to sue. Only the relatives closest in line to the decedent can sue, defendants contend, because of the hierarchy created by M.C.L.A. § 333.10102. The plaintiffs in the *Miller* and *Saunders* cases include both parents and siblings of the decedent; defendants maintain that only the parents should be permitted to sue.

■ The Supreme Court has stated that the question of·standing requires consideration of both constitutional and prudential concerns. In order to fulfill the minimum constitutional mandate, it is essential that the plaintiff make out a case or controversy between himself and the defendant by " 'alleg[ing] such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). Therefore, a plaintiff must have suffered an injury at the hands of the defendant which can be redressed by the courts. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ The prudential concerns relevant to the standing inquiry focus on whether the proper plaintiff is suing for a specific enough injury. Plaintiffs may not sue where the harm is little more than a "generalized grievance" suffered by a large class of citizens. *See Warth, supra,* 422 U.S. at 499, 95 S.Ct. at 2205; *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Also, the Supreme Court has stated that "even when the plaintiff has alleged injury sufficient to meet the 'case or

controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205.

In this case, defendants appear to argue that the court should dismiss the claims by the Miller and Saunders siblings for prudential reasons—because they are essentially asserting their parents' claims, not their own. As defendants state:

> plaintiffs claim that the actions of the defendants deprived them of the right to direct the disposition of plaintiffs' decedents. Once the disposition of the body is made, it is irrevocable. The decision can be waived, or delegated, but with the waiver or delegation goes the claim to injury. Consequently, a violation of that right, as is alleged here, cannot be an injury suffered personally to multiple parties of varying degrees of relationship to plaintiffs' decedents.

*Def. Br.* at 7–8. At the heart of defendants' argument is the Michigan statute which establishes a hierarchy for determining which family members may donate the body or organs from the body of a decedent. The statute provides as follows:

> (2) Any of the following persons, in order of priority stated, when persons in prior classes are not available at the time of death, and in the absence of actual notice of contrary indications by the decedent or actual notice of opposition by a member of the same or a prior class, may give all or any physical part of the decedent's body for any purpose specified in section 10103:
> (a) The spouse.
> (b) An adult son or daughter.
> (c) Either parent.
> (d) An adult brother or sister.
> (e) A guardian of the person of the decedent at the time of the death.
> (f) Any other person authorized or under obligation to dispose of the body.

M.C.L.A. § 333.10102.

Therefore, the issue for the court to decide is whether the statutory scheme, which determines who has priority to dispose of the body, applies in a suit where plaintiffs allege a deprivation of a right to dispose of a body. No cases have addressed this question, even indirectly. The Michigan courts have issued opinions on related issues, however, that are instructive.

In discussing the tort of mutilation of a body, the Michigan Supreme Court has stated that "[t]he recovery in such cases is not for the damage to the corpse *as property,* but damage to the next of kin by infringement of his right to have the body delivered to him for burial without mutilation." *Keyes v. Konkel,* 119 Mich. 550, 78 N.W. 649, 649 (1899) (emphasis in original). In *Doxtator v. Chicago & W.M. Ry. Co.,* 120 Mich. 596, 79 N.W. 922, 922 (1899), the Michigan Supreme Court stated that

> it has been held in a number of well-considered American cases that the one whose duty it is to care for the body of the deceased is entitled to possession of the body, as it is when death comes, and that it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way.

*Id.,* 79 N.W. at 922. That court has also stated that "[i]t seems to be settled by the great weight of authority that the unlawful and intentional mutilation of a dead body gives rise to a cause of action on behalf of the person or persons entitled to the possession, control, and burial of such body." *Deeg v. City of Detroit,* 345 Mich. 371, 76 N.W.2d 16, 19 (1956) (widow suing for mutilation of her dead husband's body). *See also Vogelaar v. United States,* 665 F.Supp. 1295, 1306 (E.D.Mich.1987) (quoting § 868 of the Restatement (Second) of Torts which provides that "[o]ne who ... negligently ... withholds ... the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.").

Each of these cases generally indicates that only one person, or a class of persons, can bring suit for interfering with their right to dispose of the decedent's body. In *Keyes,* the Michigan Supreme Court spoke of the "next of kin". Black's Law Dictionary de-

t">

fines this term to generally denote "the persons nearest of kindred to the decedent, that is, those who are most nearly related by blood", although the term occasionally refers to all heirs. *Black's Law Dictionary* 724 (abridged 6th Ed.1991). Furthermore, the Michigan Supreme Court has also determined that "next of kin", as used in the state wrongful death statute means "nearest blood relation". *MacDonald v. Quimby,* 350 Mich. 21, 85 N.W.2d 157, 162 (1957) (citing 51 C.J.S. 453). *Doxtator* likewise indicates that only one person is entitled to possession of the body after death. In the most recent Michigan Supreme Court case, *Deeg,* the court refers to "person or persons", implying either that a relative who is not the nearest of kin has the same right to sue for mutilation of a body as does the nearest of kin or that everyone in the class comprising the nearest of kin has the same right to sue. The first interpretation, that a relative who is not the nearest of kin has the same right as the nearest of kin, appears to contradict the earlier cases, although *Deeg* cites the earlier cases to support its conclusion.

In *Allinger v. Kell,* 102 Mich.App. 798, 302 N.W.2d 576 *rev'd on other grounds,* 411 Mich. 1053, 309 N.W.2d 547 (1981), the Michigan Court of Appeals permitted parents of the decedent to sue for mutilation of their daughter's body, although the daughter was married. Under the defendants' reasoning, such a result would be impossible, because spouses are higher than parents in the statutory hierarchy. However, at issue in *Allinger* was a different statute than the statute at issue in this case. The *Allinger* court noted that the statutes relied upon by the parties during their arguments, M.C.L.A. § 328.151, M.S.A. § 14.524 and M.C.L.A. § 333.2855, M.S.A. § 14.15(2855) provided that "no 'autopsy, post-mortem, or dissection shall be performed upon a dead body except by a physician, who has been granted written consent therefor by whichever 1 of the following assumes custody of the body for purposes of burial'." *Allinger,* 302 N.W.2d at 579. The list the statute refers to includes both parent and surviving spouse. In reaching its conclusion, the court of appeals cited *Deeg, supra,* and stated that "[s]ince plaintiffs were entitled to, took custody of, and made all funeral arrangements for the corpse of their daughter, the trial judge was correct in holding that they had standing to sue for the mutilation of their offspring's body." *Id.* 302 N.W.2d at 579. The court rejected the defendants' argument that only the nearest of kin had standing to sue under that statute because of the language of the statute. Because the language of a statute different from that at issue in this case dictated the result in *Allinger,* the holding in *Allinger* is inapposite in the instant case.

■ In each of the above-cited cases, including *Allinger,* only one person or class of persons sued for the tort of mutilation of a body. In the instant case, representatives from two classes of relatives—parents and siblings—are suing. Even given the result in *Allinger* and one possible interpretation of the language in *Deeg,* the court finds that the siblings in the *Miller* and *Saunders* cases do not have standing. *Keyes* and *Doxtator* clearly indicate that only the "next of kin", defined by the Michigan Supreme Court as the *nearest* of kin, whether that class is comprised of one or more people, has standing to sue for mutilation of a body.

A different result would have far-reaching effects. To hold that the siblings have standing would mean that medical examiners must obtain the consent of all those in the statutory hierarchy to donate the body or its organs. However, the purpose of having the hierarchy is to place the ultimate decisions in the hands of the closest kin. When seeking consent for donations, the decision by the person at the top of the hierarchy, for instance, a spouse, is binding upon all those below the spouse. If a parent or sibling disagrees with the spouse's decision to donate organs, the parent or sibling has no recourse against the spouse or the medical examiner. Because only the nearest kin has the right to make such decisions, only the nearest kin has a property right in the body. Since the siblings in the *Miller* and *Saunders* cases are not the nearest kin, they do not have a property right in the body, and thus do not have standing to sue for violation of a property right. Accordingly, defendants are entitled to summary judgment on this issue.

### D. Section 1983 Claim

1.

Title 42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Municipalities and local officials sued in their official capacities are considered "persons" for § 1983 purposes. *Monell v. Department of Social Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In order to prove a claim under § 1983, plaintiffs must show that they were "deprived of a right secured by the Constitution or laws of the United States, and [ ] that [they] w[ere] subjected to or caused to be subjected to this deprivation by a person acting under color of state law." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). However, recovery under § 1983 cannot be premised upon a theory of *respondeat superior* unless one of its agents acted according to official policy. *Id.* Additionally, the Sixth Circuit has held that plaintiff has a constitutionally-protected property interest in the deceased's corneas. *Whaley v. County of Tuscola*, 58 F.3d 1111 (6th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 476, 133 L.Ed.2d 404 (1995).

The parties argue primarily over whether the deprivation of plaintiff's property interest was "the result of 'municipal custom or policy.'" *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985). Such a custom or policy must be "the moving force of the constitutional violation". *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. Moreover, a mere negligent act or omission cannot provide the basis for recovery under § 1983. *Daniels v. Williams*, 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986) ("Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.").

Defendants contend that the only policy which existed was to seek and obtain consent before removal of any corneas or eyes. Plaintiffs dispute this. Both parties point to a letter written by Dr. Goldberger to Mr. Herrera as establishing the relevant policy. Dr. Varner avers that he followed Dr. Goldberger's policy when he succeeded Dr. Goldberger as chief medical examiner of Saginaw County. This letter reads as follows:

April 29, 1983

Dear Mr. Herrera:

Pursuant to our concersation [sic] in my office april [sic] the 25th., 1983 I have no objection to Saginaw county [sic] being cooperative, [sic] with the eye bank program in the State of Michigan, in accordance with the legal statue [sic].

We sould [sic] prefer, whenever feasible or possible, that the next of kin's consent be obtained. We recognize also that the need for consent is not always necessary but we would prefer that the consent be received and signed for legal reasons. Otherwise your program seems satisfactory.

> Sincerely yours,
> M.B. Goldberger, D.O.
> Chief Medical Examiner
> Saginaw County

Under Rule 56, this evidence must be examined in the light most favorable to plaintiffs. In analyzing the language of the letter, it is clear that one possible interpretation could be that Dr. Goldberger authorized, at least in certain circumstances, his deputies to remove corneas without permission from the next of kin in violation of their due process rights. Dr. Goldberger did say that he "would prefer" that consent be obtained, which might indicate a policy of always seeking consent. However, he also stated that he "recognize[d] also that the need for consent is not always necessary", which could indicate a policy which did not require obtaining of consent. Because the court must view

these possible interpretations in the light most favorable to plaintiffs, the court finds a genuine issue of material fact regarding the policy of defendants.

■ Defendants also argue that if they did have a policy that resulted in a deprivation of plaintiffs' due process rights, the court must determine whether the Sixth Circuit's decision in *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir.1991) can be applied retroactively. *Brotherton* was the first indication in this circuit that the next of kin has a constitutionally-protected property interest in their deceased relative's body. In *Brotherton*, the Sixth Circuit examined an Ohio statute which, like the Michigan statute at issue here, permitted the removal of corneas as long as the coroner knows of no objection by the decedent or his family. The custom and policy, as established in *Brotherton*, was not to obtain the consent of the next of kin and not to inspect the medical records or hospital documents before removing corneas. In a case of first impression, the Sixth Circuit determined that the next of kin had a constitutionally-protected property interest in their deceased relatives' body under Ohio law.

However, the Sixth Circuit decision in *Whaley* also decided an issue of first impression. Although the Sixth Circuit followed the reasoning in *Brotherton*, that decision revolved around Ohio law and was not dispositive of the issue in the instant case, which revolved around Michigan law. Therefore, the true retroactivity question in this case is whether the *Whaley* decision should be applied to impose liability in this case.

In *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), the Supreme Court addressed this very issue. The issue in *James B. Beam* was whether the Supreme Court's decision in *Bacchus Imports v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984) should be applied retroactively to cases pending at the time the Supreme Court handed down its decision in *Bacchus*. Both the plurality and the dissent agreed that because the *Bacchus* decision was silent about whether the decision should apply on remand, it should be applied retroactively to

the parties in the case. The plurality opinion in *Beam* stated that "[b]ecause the *Bacchus* opinion did not reserve the question whether its holding should be applied to the parties before it ... it is properly understood to have followed the normal rule of retroactive application in civil cases." *Beam*, 501 U.S. at 539, 111 S.Ct. at 2445. The dissent in *Beam* also

> agree[d] that the Court in *Bacchus* applied its rule retroactively to the parties before it. The *Bacchus* opinion is silent on the retroactivity question. Given that the usual course in cases before the court this Court is to apply the rule announced to the parties in the case, the most reasonable reading of silence is that the Court followed its customary practice.

*Id.* at 550, 111 S.Ct. at 2451.

The Sixth Circuit has likewise noted that an earlier decision in a case should be applied in later proceedings. *Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir.1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). In *Garner*, the Sixth Circuit considered whether the city should be held liable after the Supreme Court's decision earlier in the case, *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that it was unconstitutional to use deadly force to apprehend a fleeing felon. The district court had determined that the Supreme Court decision should not be applied retroactively, and the Sixth Circuit disagreed, stating that "it is hornbook law that the rule should be applied retroactively in the very case that lays down a rule." *Garner*, 8 F.3d at 362.

The Sixth Circuit, at an earlier stage of the proceedings in this case, held that plaintiffs have a constitutionally-protected property right in their deceased relatives' corneas. Even though this decision was the first to find such a due process right, it should be applied retroactively to this case. In taking the facts in the light most favorable to plaintiffs, the court finds that defendants may have had a policy or custom of removing corneas without the consent of the next of kin. Therefore, defendants are not entitled to summary judgment on the issue of their liability under § 1983 in their official capaci-

ties for promulgating an unconstitutional policy or custom.

**2.**

Plaintiffs also seek to impose § 1983 liability through a theory that defendants' failure to supervise, investigate and monitor defendants Hines and Herrera while they were improperly removing the deceased's corneas amounts to an official policy which can provide the basis for a § 1983 claim.

■ Where an act or omission itself, such as defendants' negligent acts and omissions, is not unconstitutional, the Sixth Circuit has held that in order for that act or omission to provide the basis for a § 1983 action, it must "constitute[ ] deliberate indifference" to the rights of those injured. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 912 (6th Cir.1995). *See also Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990); *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 758 (5th Cir.1993), *reh'g denied*, 20 F.3d 471 (1994); *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir.1992). This argument often arises in actions where plaintiffs claim that the defendant failed to properly train or supervise its employees, whose actions directly lead to the constitutional violation. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■ In this case, the allegedly unlawful "policy"—failure to adequately supervise, investigate and monitor—is not itself unconstitutional. Therefore, the negligence on defendant's part is only indirectly a "moving force" behind the deprivation, and cannot provide a basis for a § 1983 suit unless plaintiffs demonstrates "deliberate indifference". As the Sixth Circuit has stated:

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984) (citing *Hays v. Jefferson County*, 668 F.2d at 872–74).

■ The concept of deliberate indifference implies that defendants knew or should have known that they were doing something "wrong" or "unconstitutional". *Watson v. Sexton*, 755 F.Supp. 583, 588 (S.D.N.Y.1991); *Williamson v. City of Virginia Beach*, 786 F.Supp. 1238, 1264–65 (E.D.Va.1992) (holding that "the conclusion that [the constitutional rights alleged by plaintiff] were not clearly established negates the proposition that the city acted with deliberate indifference"), *aff'd*, 991 F.2d 793 (4th Cir.1993); *Zwalesky v. Manistee County*, 749 F.Supp. 815, 820 (W.D.Mich.1990). However, Michigan law at the time that the autopsies in this case were performed expressly permitted the nonconsensual removal of corneas. Defendants could not know that the Sixth Circuit would later determine that the law violated the due process rights of the next of kin. Because defendants did not act with deliberate indifference to the rights of plaintiffs, they are not liable under § 1983, and are entitled to summary judgment on the issue of whether their negligence provides a basis for § 1983 liability.

### E. State Law Claims

Defendants argue that the doctrine of governmental immunity protects them from liability on the remaining state law claims. Plaintiffs contend that defendants were acting *ultra vires*, and therefore, governmental immunity does not protect them. Plaintiffs maintain that the fact that defendants did not supervise those under them and the fact that they permitted bodies to be returned with less than all of its body parts contrary to law lead to the conclusion that defendants were acting outside the scope of their offices. Plaintiffs focus on the fact that defendants may have been permitted by law to conduct autopsies, but they were not permitted by law to remove corneas without the consent of the next of kin. *Pl.Br. (2/4/93)* at 15–16.

Michigan's law of governmental immunity from tort liability is primarily statutory, which codifies the common law. The statute reads, in relevant part:

(1) Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function....

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in the subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

M.C.L.A. § 691.1407, M.S.A. § 3.996(107).

### 1. Defendant Saginaw County

 There are no applicable exceptions to subsection (1) as it applies to defendant Saginaw County. Therefore, Saginaw County is immune from liability if it is "engaged in the exercise or discharge of a governmental function." A governmental function is "any activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law." *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641, 661 (1984). Plaintiff does not contest that the county is permitted to create and operate medical examiner's offices. *See*

*also Burse v. Wayne County Medical Examiner*, 151 Mich.App. 761, 391 N.W.2d 479 (1986). Numerous statutory sections regulate how autopsies are to be performed, but these do not affect the delegation of power and authority to perform autopsies.

 Plaintiff's argument that Saginaw County acted *ultra vires* is unpersuasive. In *Richardson v. Jackson County*, 432 Mich. 377, 443 N.W.2d 105 (1989), the plaintiff argued that the county acted *ultra vires* by failing to properly warn swimmers of a severe drop off in the lake's swimming area. The Michigan Supreme Court rejected this argument, holding that regulation of municipally-owned swimming pools does not affect the county's authority to operate them.

Improper performance of an activity authorized by law is, despite its impropriety, still "authorized" within the meaning of the *Ross* governmental function test. An agency's violation of a regulatory statute that requires the agency to perform an activity in a certain way cannot render the activity ultra vires, as such a conclusion would swallow the *Ross* rule by merging the concepts of negligence and ultra vires.

*Id.* 443 N.W.2d at 108. An *ultra vires* act is one that "the governmental agency lacks legal authority to perform in any manner." *Id.* 443 N.W.2d at 109. The application of this reasoning to the instant case is straightforward. Plaintiff has done nothing more than allege that defendant Saginaw County's failure to properly supervise and monitor those in charge of performing autopsies was an *ultra vires* act. Even assuming that defendant Saginaw County did have such duties, they are regulatory and do not affect the fact that it was discharging a governmental function. Mere negligence, as the *Richardson* court so clearly stated, does not render an action *ultra vires*. Because defendant Saginaw County had the authority to perform autopsies and did not act *ultra vires*, it is entitled to summary judgment on the state law claims based on application of the governmental immunity statute.

### 2. Defendants Dr. Goldberger and Dr. Varner

 Dr. Goldberger and Dr. Varner will be immune from suit if they demonstrate the

four elements required by the governmental immunity statute: that they were acting on behalf of a governmental agency; that they reasonably believed they were acting within the scope of their authority; that they were discharging a governmental function; and that their actions did not constitute gross negligence. Gross negligence is defined by the statute to mean a substantial lack of concern for the resulting injury. M.C.L.A. § 691.1407(2), M.S.A. § 3.996(107)(2).

With respect to the first factor, it is not contested that the doctors had the authority to perform, and to have others perform, autopsies. As to the second factor, there is no evidence on the record to indicate that they did not reasonably believe that they were acting within the scope of their authority. Plaintiffs confuse their causes of action against defendant Hines and defendant Herrera with those against the instant defendants, and their argument essentially attempts to impose liability on Dr. Goldberger and Dr. Varner based on the allegedly *ultra vires* actions of defendants Hines and Herrera. Plaintiffs allege that the instant defendants acted negligently by failing to follow certain regulations. Their claims that defendants Hines and Herrera were acting outside the scope of their authority by removing the corneas and/or eyes without permission is irrelevant to the analysis of whether Dr. Goldberger and Dr. Varner were acting outside the scope of their authority.

Furthermore, the citation to *Deeg v. City of Detroit,* 345 Mich. 371, 76 N.W.2d 16 (1956), is unavailing. In *Deeg,* a decision-maker for the city was present at the time of the autopsy, ordered an autopsy although he was not authorized to do so, and ordered the removal of organs although others at the scene believed that such removal was wholly improper. Additionally, the issue of governmental immunity was never raised by the court (perhaps because it was never raised by defendants). The case held that the widow did have a cause of action for mutilation of her deceased husband's body. This, however, is not the issue presented here. Plaintiffs may well have a cause of action with defendants simultaneously being protected by governmental immunity.

With respect to *Allinger v. Kell,* 102 Mich. App. 798, 302 N.W.2d 576, *rev'd,* 411 Mich. 1053, 309 N.W.2d 547 (1981), plaintiffs cite to the dissent in the court of appeals decision. That citation is likewise unavailing because the issue there was quite different than that presented with respect to these defendants. In *Allinger,* a deputy medical examiner removed body parts from the deceased, who had been murdered. The court of appeals granted summary judgment on the grounds that the medical examiner was immune because the medical examiner was authorized to do autopsies where necessary to investigate an unnatural cause of death, and to keep body parts if necessary to investigate a crime. The Michigan Supreme Court reversed the court of appeals, finding summary judgment to be improper. In its brief order, the supreme court held that there was a question of fact regarding the necessity of keeping the body parts in this case in order to investigate or detect a crime, and thus the medical examiner may have been acting entirely outside the scope of his authority. In this case, Dr. Goldberger and Dr. Varner were acting within the scope of their authority in ordering autopsies. That they may have acted negligently in carrying out some of their duties does not alter this conclusion.

Regarding the third factor, as noted above, the doctors had the power to direct that autopsies be performed; the fact that they may have not followed every applicable regulation does not render their actions *ultra vires.* Finally, as to the fourth factor, there is no evidence that the doctors had a substantial lack of concern for the resulting injury.

Because there is no genuine issue of material fact as to whether Dr. Goldberger and Dr. Varner are immune pursuant to Michigan's governmental immunity statute, they are entitled to summary judgment on the state law claims pending against them.

### IV. Conclusion

Accordingly, for the reasons stated above, IT IS ORDERED that defendant Saginaw County's, Goldberger's, and Varner's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART as follows:

1. the motion is granted as to the § 1983 claim against defendants for their negligence and as to the state law claims against defendants; and

2. the motion is denied as to the propriety of Dr. Varner as a party, as to dismissal of the case on statute of limitations grounds, and as to the § 1983 claim against defendants for following an unconstitutional policy or custom.