W B CENAC MEDICAL SERVICE, PC v MICHIGAN PHYSICIANS
MUTUAL LIABILITY COMPANY

Docket No. 107397. Submitted December 8, 1988, at Detroit. Decided
February 6, 1989.

Michigan Physicians Mutual Liability Company issued a property
insurance policy to W. B. Cenac Medical Service, P.C., Dr.
Winston B. Cenac and Dr. Cenac's wife, Noreen Cenac. The
policy contained a business-interruption and loss-of-earnings
clause which provided that the insurer would pay for lost
earnings occasioned by the interruption of business caused by
direct damage to the insured premises for as long as it reason-
ably took to repair the premises. On April 5, 1986, the insured
premises was damaged by fire, resulting in loss of rental
income to the corporate insured and loss of fees for professional
services performed by Dr. Cenac. Michigan Physicians Mutual
began paying business-interruption benefits, including payment
for the lost earnings of Dr. Cenac. In May, 1986, Dr. Cenac, the
sole corporate officer and income-generating employee of the
corporate insured, died in an airplane accident. Michigan Phy-
sicians Mutual stopped paying for Dr. Cenac's loss of earnings.
The corporate insured commenced an action against Michigan
Physicians Mutual in Calhoun Circuit Court, seeking loss-of-
earnings benefits for the period between Dr. Cenac's death and
the October, 1986, date of restoration of the business premises,
basing the claim on the allegation that, had the premises been
available, the corporate insured would have hired another
doctor to take over the providing of professional services.
Plaintiff moved for summary disposition. Defendant moved for
summary disposition. The trial court, James C. Kingsley, J.,
denied plaintiff's motion and granted defendant's motion on the
basis that plaintiff's claim of lost income was too speculative.
Plaintiff appealed.

The Court of Appeals *held:*

There is a disputed question of fact as to whether the

References

Am Jur 2d, Insurance § 513.

Business interruption or use and occupancy insurance. 83 ALR2d
885.

corporate insured could have secured the services of another physician had the insured premises been available to carry out such a scheme on the death of Dr. Cenac. Since it cannot be said that the plaintiff's claim of lost income as a result of the unavailability of the premises is completely untenable, it was error to grant summary disposition in favor of defendant.

Reversed.

INSURANCE — LOST INCOME — PROFESSIONAL CORPORATIONS — SUMMARY DISPOSITION.

Recovery under a business interruption and loss-of-earnings clause of a property insurance policy by a professional corporation which is a named insured is not absolutely precluded where, following the destruction of the insured facility and prior to its repair, the professional who is the sole corporate officer and income-producing employee of the professional corporation dies; accordingly, summary disposition may not be granted on a claim for loss of income by the professional corporation where it is alleged that, in the absence of the destruction of the insured facility, the corporation would have hired a replacement professional (MCR 2.116[C][10]).

*Barsky & Meth, P.C.* (by *Seth H. Barsky*), for plaintiff.

*Kerr, Russell & Weber* (by *Daniel G. Beyer* and *Kenneth C. Harrison*), for defendant.

Before: WAHLS, P.J., and McDONALD and C. W. SIMON,* JJ.

WAHLS, P.J. Plaintiff, W. B. Cenac Medical Service, P.C., appeals as of right from a January 22, 1988, order of the Calhoun Circuit Court denying the motion of plaintiff for summary disposition and granting the motion of defendant, Michigan Physicians Mutual Liability Company, for summary disposition. We reverse and remand for further proceedings, holding that, under an insurance policy insuring against loss of earnings due to business interruption caused by the destruction of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

business premises, an insured corporation should not be precluded from presenting arguments to a jury to support claims for the loss of earnings of a hypothetical employee who, but for the destruction of the business premises, could have generated earnings after the death of the corporation's sole income-generating employee and before the scheduled reopening of the corporation's business premises.

The record reveals that plaintiff is a professional corporation which operated a medical clinic and that Winston B. Cenac, D.O., was the sole corporate officer and income-generating employee. Defendant issued a property insurance policy to plaintiff which was effective from November 15, 1985, to November 15, 1986, and in which the named insureds were plaintiff, Dr. Cenac, and Dr. Cenac's wife, Noreen Cenac. Included in this policy was a business-interruption and loss-of-earnings clause, which provided, in pertinent part:

> *We* [Michigan Physicians Mutual Liability Company] will pay for *your* loss of earnings when *your* practice is interrupted. *We* will also pay for extra expenses *you* incur to continue *your* practice. But the actual or possible interruption of *your* practice must be the result of direct damage to *your* buildings or professional or office contents, or as a direct result of loss to a building or premises adjacent to *yours* by an insured peril when *you* are prohibited from entering *your* premises by order of civil authority. *We* will pay for *your* loss beginning the date of the damage for as long as it should reasonably take to restore *your* practice to the condition it was in before the damage, regardless of the expiration date of *your* policy or the time *your* practice is actually interrupted. Payments will not, though, continue beyond 30 days after completion of replacement, repair or rebuilding of *your* property. [Emphasis in original.]

The policy also required plaintiff to reduce its losses occasioned by a business interruption resulting from damage to its business premises either by using other premises or by repairing or replacing the damaged property as soon as possible.

On April 5, 1986, a fire at plaintiff's business premises caused property damage resulting in the loss of income from rent which would otherwise have been paid to plaintiff and from fees for professional services which would otherwise have been performed by Dr. Cenac. The projected date of restoration of the business premises was October 6, 1986. In conformity with the terms of its insurance policy, defendant began paying business-interruption benefits to plaintiff, benefits which included payment for the loss of earnings of Dr. Cenac. When in May, 1986, approximately six weeks after the fire, Dr. Cenac was killed in an airplane crash, defendant stopped paying for Dr. Cenac's loss of earnings. This prompted plaintiff to file a complaint against defendant contending that, under the terms of the insurance policy, it was entitled to payment for Dr. Cenac's loss of earnings until October 6, 1986, the projected date of restoration of the business premises, regardless of Dr. Cenac's death. After defendant filed an answer and list of affirmative defenses, plaintiff filed a motion for summary disposition under MCR 2.116(C)(10). In response, defendant also filed a motion for summary disposition under both MCR 2.116(C)(8) and 2.116(C)(10). Oral arguments were conducted and the trial court ruled in favor of defendant, stating:

> Now, the bottom line, gentlemen, is I will grant the defendant's motion and the reason I do so is I don't think there is any ambiguity in the policy as it relates to the facts here. First of all, as pointed

out earlier, the interruption of the practice must be as a result of direct damage to your buildings.

Now, reading further, it says if you can reduce your loss covered by this option, you must do so, one, by arranging to use other premises and/or equipment to continue your practice, and two, by rebuilding, repairing or replacing the damaged, stolen or destroyed property as soon as possible.

I realize that the P.C. [plaintiff] was a named insured, that Dr. Cenac was also a named insured. Here, once Dr. Cenac died in the airplane accident we are faced with the speculative possibility that W. B. Cenac Medical Services, P.C. would have been conveyed to some other person. I underline the speculative nature of that prospect. I realize in the defendant's brief they [sic] indicate no one on behalf of Dr. Cenac individually asked MPMLC [defendant] to transfer the doctor's interest policy to another individual physician.

Now, where you have the principal employee who generates the income pass away for whatever reason, unless you had the specific identification of the individuals to whom the P.C. is going to be transferred, the length of time this will take place, I don't believe that there is any underlying obligation for the insurance company to pay loss of income to the P.C. when they have no income generated, if you will, in existence. That's the reason, the bottom line, that I am granting the defendant's motion.

Although the trial court failed to specifically identify the subrule under which it granted defendant's motion for summary disposition, it is clear that the court looked beyond the pleadings in deciding this issue. Thus, we will review the motion as having been granted under MCR 2.116(C)(10)—there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The standard for reviewing such a motion is well established:

A motion for summary disposition brought under MCR 2.116(C)(10), based on the lack of a genuine issue of material fact, tests whether there is factual support for the claim. In ruling on the motion, the trial court must consider the affidavits, pleadings, depositions, admissions and other documentary evidence submitted by the parties. MCR 2.116(G)(5). The opposing party must show that a genuine issue of fact exists. Giving the benefit of all reasonable doubt to the opposing party, the trial court must determine whether the kind of record that might be developed would leave open an issue upon which reasonable minds could differ. *Weeks v Bd of Trustees, City of Detroit General Retirement System,* 160 Mich App 81, 84; 408 NW2d 109 (1987). A reviewing court should be liberal in finding that a genuine issue of material fact exists. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). A court must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome. *Rizzo, supra* at 371.

The party opposing a motion for summary disposition has the burden of showing that a genuine issue of disputed fact exists. *Fulton v Pontiac General Hospital,* 160 Mich App 728, 735; 408 NW2d 536 (1987). The opposing party may not rest upon mere allegations or denials in the pleadings but must, by affidavit or other documentary evidence, set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). Should the opposing party fail to make such a showing, summary disposition is appropriate. *Fulton, supra* at 375-376; *Rizzo, supra* at 372. [*Metropolitan Life Ins Co v Reist,* 167 Mich App 112, 118-119; 421 NW2d 592 (1988), lv den 431 Mich 876 (1988).]

Defendant, in its appellate brief, presents cogent and well-reasoned arguments to support its conclusion that the trial court correctly concluded in this case that, under the terms of the parties' insurance policy, plaintiff was not entitled to payment

of benefits in the amount which, had he lived, Dr. Cenac would have earned prior to October 6, 1986, the date projected for the completion of restoration work on plaintiff's business property. Defendant emphasizes that, after Dr. Cenac died, any losses incurred by plaintiff for Dr. Cenac's loss of earnings was no longer attributable to the fire damage to plaintiff's business premises and "was therefore not caused by a risk for which [defendant] provided coverage." Moreover, defendant stresses that, "because the P.C. [plaintiff] provided no evidence other than mere speculation as to damages for the period between Dr. Cenac's death [in May, 1986] and October 6, 1986, the P.C. cannot . . . satisfy its burden of proof as to the actual loss." In short, defendant contends that, first, plaintiff incurred no deprivation attributable to a loss of earnings by Dr. Cenac for the simple reason that a dead person cannot have any earnings, and, second, any loss incurred by plaintiff under the theory that Dr. Cenac's position in the corporation could have been filled by a replacement physician is merely speculative. Defendant, relying on three cases from foreign jurisdictions,[1] cites no Michigan case law.

While, of course, we agree with defendant that plaintiff incurred no deprivation attributable to a loss of earnings by Dr. Cenac between the time of his death in May, 1986, and October 6, 1986, the absence of such deprivation does not necessarily relieve defendant of its liability to plaintiff for loss of earnings. Plaintiff, in addition to Dr. Cenac and his wife, was specifically named as an insured party in the insurance policy with defendant, and

[1] *American Alliance Ins Co v Keleket X-Ray Corp,* 248 F2d 920 (CA 6, 1957); *DiLeo v United States Fidelity & Guaranty Co,* 109 Ill App 2d 28; 248 NE2d 669 (1969); *Eastern Associated Coal Corp v Aetna Casualty & Surety Co,* 632 F2d 1068 (CA 3, 1980), cert den 451 US 986; 101 S Ct 2320; 68 L Ed 2d 843 (1981).

plaintiff, as a corporate entity, was separate and distinct from the holder of its stock. *Bourne v Muskegon Circuit Judge,* 327 Mich 175, 191; 41 NW2d 515 (1950). "Very simply put," defendant states, "the death of Dr. Cenac terminated the liability of *that* individual employee to earn income for the P.C." (Emphasis in original.) While this is true and seems to be uncontested by plaintiff, we note that the death of Dr. Cenac did not terminate the ability of a replacement employee to earn income for plaintiff. Defendant, in its lengthy but well-reasoned analysis of this issue in its brief, in which it is asserted that "the hypothetical lost earnings of a 'replacement physician' after Dr. Cenac's death are too speculative as a matter of law" to permit recovery by plaintiff, concludes by arguing that, "even if these imagined successor-physicians existed, no imaginable development of facts could prove the earnings of these successor-physicians without resorting to speculation." The hiring of a replacement physician who could have earned fees comparable to those earned by Dr. Cenac—while perhaps a difficult point to establish —is not by any means "unimaginable" to us. Presumably, Dr. Cenac had a clientele which, subsequent to Dr. Cenac's death, continued to require medical attention similar to that provided by Dr. Cenac. But for the destruction by fire of the business premises, Dr. Cenac's clientele, after his death in May, 1986, and before October 6, 1986, might well have been treated by a replacement physician. We quote with agreement the following language from plaintiff's appellate brief:

> Because the plaintiff corporation is a separate entity from Dr. Cenac individually, and remained a viable entity after Dr. Cenac's death, it is unreasonable to assume that the plaintiff corporation

could not have sustained a loss of earnings subsequent to Dr. Cenac's death. Had there never been a fire loss in this case, upon Dr. Cenac's death the clinic could have continued operation and continued earning profits under the direction of a new physician. This is a common practice in the medical as well as legal professions, and there are thousands of medical clinics (and law firms) which operate under the name of a founding physician or lawyer who has long since passed away. Such practices often flourish and grow, and it is up to a jury, not the defendant, to determine whether the plaintiff corporation could have earned money subsequent to Dr. Cenac's death.

Defendant's argument that plaintiff's proofs are insufficient regarding the availability of a replacement physician and the amount of such physician's wages only underscores the existence of factual issues in this case which should have impeded the trial court from deciding those issues by way of a motion for summary disposition. Giving plaintiff the benefit of all reasonable doubt, and being mindful that a reviewing court should be liberal in finding that a genuine issue of material fact exists, we believe that the kind of record which might be developed in this case leaves open issues upon which reasonable minds could differ. Plaintiff should not prematurely be deprived of an opportunity to convince the trier of fact that, but for the fire damage to the business premises, plaintiff could have hired a physician to replace Dr. Cenac after his death in May, 1986, and that the wages of such a replacement physician are sufficiently determinable to justify their payment to plaintiff under the terms of the insurance policy's business-interruption and loss-of-earnings clause. While defendant ultimately may well prevail on the factual issues raised, plaintiff may not be

debarred, by way of a motion for summary disposition under MCR 2.116(C)(10) granted in favor of defendant, from presenting to the trier of fact its proofs regarding the factual issues in dispute.

Reversed and remanded for further proceedings.