DAMPIER v WAYNE COUNTY

Docket No. 202200. Submitted October 20, 1998, at Detroit. Decided February 5, 1999, at 9:05 A.M.

Johnnie B. Dampier and others brought an action in the Wayne Circuit Court against Wayne County, Grace Hospital Corporation, and Stinson Funeral Home, Inc., seeking damages as a result of the defendants allegedly allowing the remains of William Dampier to decompose to a "ghastly and grotesque sight" before the plaintiffs were permitted to view the remains at the funeral home. The deceased was pronounced dead at a hospital operated by defendant hospital corporation after being taken to the hospital with an apparent heart attack. Johnnie Dampier, the deceased's widow, requested an autopsy, and the deceased's remains, which had been in the care, custody, and control of the hospital, were entrusted to Wayne County. After the Wayne County Medical Examiner's Office examined the deceased's body and determined the cause of death without performing an autopsy, the remains were entrusted to Stinson Funeral Home. The plaintiffs' original complaint sought damages from Wayne County on the basis of the county's alleged negligence that resulted in the deceased's remains not being properly preserved from decomposition. The county moved for summary disposition on the basis of governmental immunity. The plaintiffs were permitted to file an amended complaint alleging that the county's failure to perform an autopsy constituted breach of contract and that the county's failure to properly preserve the deceased's remains constituted a violation of the plaintiffs' due process rights under the Michigan Constitution. The county again moved for summary disposition on the bases of governmental immunity and that the county had no contractual obligation to perform an autopsy. The court, James R. Chylinski, J., granted summary disposition for the county. The court also denied the plaintiffs' motion for leave to file a second amended complaint alleging a claim under 42 USC 1983 for violation of their due process rights under the United States Constitution. The plaintiffs appealed.

The Court of Appeals *held*:

1. The plaintiffs' assertion that the public hospital exception of subsection 7(4) of the governmental immunity statute, MCL 691.1407(4); MSA 3.996(107)(4), precludes the county from claiming governmental immunity under subsection 7(1), MCL 691.1407(1); MSA 3.996(107)(1), is without merit. Subsection 7(4)(b), MCL 691.1407(4)(b); MSA 3.996(107)(4)(b), defines a hospital as "a facility offering inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual." The performing of an autopsy does not constitute treatment of a deceased, nor does it render a deceased a patient of the physician performing the autopsy. Accordingly, because the Wayne County Morgue provides neither inpatient care nor active treatment of the deceased persons that are sent there to be autopsied by the medical examiner's office, the trial court did not err in holding that the county morgue is not a hospital within the meaning of the public hospital exception of subsection 7(4) of the governmental immunity statute.

2. Although Michigan has long recognized a common-law cause of action for the wrongful mutilation of a dead body, that common-law cause of action is not sufficiently broad to encompass a claim based on the failure to take proper steps to limit the decomposition of a dead body. Accordingly, the plaintiffs failed to establish a common-law claim that would act as an exception to the statutory governmental immunity granted to the county by subsection 7(1), and the trial court properly held that the county was not precluded from raising the defense of governmental immunity in this case by reason of the existence of the common-law action for the mutilation, evisceration, or dismemberment of a dead body.

3. The plaintiffs' claims that they had a constitutionally protected property right under the Due Process Clause of the Michigan Constitution, Const 1963, art 1, § 17, to the body of the deceased, that their due process right under the Michigan Constitution was violated by the county's failure to protect the body of the deceased from decomposition, and that the county was not entitled to governmental immunity with respect to a claim that alleges a violation of a provision of the Michigan Constitution must be rejected. Under the circumstances of this case, there was no violation of a right protected by the Due Process Clause of the Michigan Constitution, because Michigan does not recognize a property right in a dead body by the kin of the deceased. Accordingly, the trial court prop-

erly granted summary disposition with respect to the state constitutional claim on the basis that the plaintiffs failed to allege the violation of a right protected by the Michigan Constitution.

4. A motion to amend a complaint ordinarily should be granted, and a court should deny a motion to amend a complaint only for particularized reasons such as undue delay, bad faith, or undue prejudice. A court's failure to specify a reason for the denial of a motion to amend a complaint constitutes error requiring reversal unless such amendment would be futile. Because the trial court did not specify its reasons for denying the plaintiffs' motion to file a second amended complaint alleging a violation of 42 USC 1983, the denial of the motion constitutes error requiring reversal unless the proffered amendment of the complaint would have been futile.

5. The United States Circuit Court of Appeals for the Sixth Circuit in *Whaley v Tuscola Co*, 58 F3d 1111 (CA 6, 1995) recognized that a property right under the Due Process Clause of the United States Constitution exists with respect to the remains of a deceased person and that a claim under 42 USC 1983 exists for the mishandling by a governmental unit of the remains of a deceased person in a manner that results in the remains being allowed to decompose, if the mishandling can be said to have been done under color of state law. Because the plaintiffs might have been able to show that the county failed to preserve the remains of the deceased and that the failure was the result of a policy or custom that had been adopted or approved by the county, the plaintiffs' proposed amendment of their complaint to add a claim under 42 USC 1983 would not have been futile, and the trial court erred in denying the plaintiffs' motion to amend their complaint. However, to the extent that the claim under 42 USC 1983 was based on the theory of respondeat superior, summary disposition for the county was proper, because no factual development would establish that the employees of the county acted with deliberate indifference to a known constitutional right of the plaintiffs.

6. The county's motion for summary disposition with respect to the contract claim was accompanied by an affidavit of the county's chief medical examiner that asserted that decisions concerning the need to conduct an autopsy were made by the medical examiner's office on the basis of state law and that the county did not enter into contracts with hospitals concerning the conducting of autopsies. Because the plaintiffs neither responded to the factual asser-

tions made in the affidavit nor argued the contract issue before the trial court, the court properly granted summary disposition for the county with respect to the contract issue on the basis that the plaintiffs had failed to establish a genuine question of material fact in support of their contract claim.

Affirmed in part, reversed in part, and remanded.

1. GOVERNMENTAL IMMUNITY — STATUTORY IMMUNITY — PUBLIC HOSPITAL EXCEPTION — COUNTY MORGUES.

A county morgue is not a hospital within the meaning of the public hospital exception of the governmental immunity statute (MCL 691.1407[4]; MSA 3.996[107][4]).

2. DEAD BODIES — MUTILATION — DECOMPOSITION.

Michigan has long recognized a common-law cause of action for the wrongful mutilation of a dead body; however, that common-law cause of action does not encompass a claim based on the failure to take proper steps to limit the decomposition of a dead body.

3. DEAD BODIES — PROPERTY RIGHTS — MICHIGAN CONSTITUTION — DUE PROCESS CLAUSE — DECOMPOSITION.

There is no constitutionally protected property right under the Due Process Clause of the Michigan Constitution in the body of a deceased person; accordingly, the failure to preserve a dead body from decomposition does not constitute a violation of a state due process right (Const 1963, art 1, § 17).

4. DEAD BODIES — PROPERTY RIGHTS — UNITED STATES CONSTITUTION — DUE PROCESS CLAUSE — DECOMPOSITION.

A property right that is subject to the provisions of the Due Process Clause of the United States Constitution exists with respect to the remains of a deceased person; the mishandling by a state or local governmental unit of the remains of a deceased person in a manner that results in the remains being allowed to decompose gives rise to a state court action for damages pursuant to federal law, if the mishandling can be said to have been done under color of state law (US Const, Am XIV; 42 USC 1983).

*Steinberg, O'Connor & Burns, P.L.L.C.* (by *Richard L. Steinberg*), for the plaintiffs.

*Jennifer M. Granholm,* Corporation Counsel, and *Ellen E. Mason,* Assistant Corporation Counsel, for the defendant.

Before: MARKEY, P.J., and SAWYER and WHITBECK, JJ.

WHITBECK, J. The trial court granted summary disposition with respect to all elements of this case, basically on the ground of governmental immunity. Plaintiffs appeal as of right on the grounds that both the statutory public hospital and common-law exceptions to governmental immunity apply to their negligence claim and that they stated claims for violations of the Michigan Constitution for which governmental immunity is unavailable. Plaintiffs also argue that the trial court should have permitted them to file a second amended complaint to assert a claim for violating the United States Constitution. We affirm with respect to the trial court's grant of governmental immunity but reverse and remand to permit the filing of a second amended complaint asserting a federal constitutional claim.

I. BASIC FACTS AND PROCEDURAL HISTORY

The basic facts of this matter are fairly straightforward, if somewhat grisly, but the procedural history is reasonably complex. The unfortunate train of events commenced in July of 1995, when William Dampier, husband of plaintiff Johnnie Dampier, was transported to Grace Hospital after suffering a heart attack. William Dampier was pronounced dead shortly after his arrival at the hospital. Johnnie Dam-

pier requested that an autopsy be conducted to determine the exact cause of William Dampier's death. William Dampier's remains were kept in the care, custody, and control of Grace Hospital, which thereafter entrusted the remains to Wayne County. Wayne County, in turn, entrusted the remains to Stinson Funeral Home. Stinson permitted plaintiffs to view William Dampier's remains, whereupon they made the macabre discovery that the remains had been allowed to decompose to a "ghastly and grotesque sight."

Plaintiffs thereafter filed this case, alleging a claim of negligence against Wayne County, Grace Hospital, and Stinson and a claim of intentional infliction of emotional distress against Stinson. In July of 1996, the trial court granted Wayne County's first motion for summary disposition on the basis that Wayne County was immune with respect to plaintiffs' claims. Plaintiffs then filed a motion to vacate entry of this order on the ground that the order failed to state accurately the bases of the trial court's ruling. The trial court granted the motion, vacated the order, and permitted plaintiffs to file a first amended complaint to allege contract and state constitutional claims against Wayne County.

In their first amended complaint, plaintiffs added claims against Wayne County for breach of a contract delegated to it by Grace Hospital and violation of the Due Process Clause of the Michigan Constitution. Plaintiffs failed to respond in writing to Wayne County's motion for summary disposition, but orally asserted at the ensuing hearing that they had stated a

viable state constitutional claim to which Wayne County was not immune.

After the trial court indicated it was going to grant Wayne County's motion, plaintiffs orally moved for leave to file a second amended complaint to allege a federal constitutional claim against Wayne County pursuant to 42 USC 1983, for violation of their due process rights under the Fourteenth Amendment. The trial court orally denied this motion and thereafter entered an order granting Wayne County's motion for summary disposition with respect to the claims in plaintiffs' first amended complaint and denying plaintiffs' motion for leave to file a second amended complaint. Thereafter, the trial court dismissed Grace Hospital and Stinson from the suit without prejudice.

## II. STANDARD OF REVIEW

### A. GENERALLY

This Court reviews de novo an order granting summary disposition. *Weisman v U S Blades, Inc*, 217 Mich App 565, 566; 552 NW2d 484 (1996).

### B. GOVERNMENTAL IMMUNITY

"Summary disposition is proper under MCR 2.116(C)(7) for a claim that is barred because of immunity granted by law." *Smith v Kowalski*, 223 Mich App 610, 616; 567 NW2d 463 (1997). When reviewing a grant of summary disposition based on governmental immunity, this Court considers all documentary evidence submitted by the parties. *Id.* "All well-pleaded allegations are accepted as true and construed in favor of the nonmoving party." *Id.* To survive a motion for summary disposition under MCR

2.116(C)(7), the plaintiff must allege facts warranting application of an exception to governmental immunity. *Id.*

### C. FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

"Pursuant to MCR 2.116(C)(8), a motion for summary disposition is granted if the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Simko v Blake*, 448 Mich 648, 654; 532 NW2d 842 (1995). A motion for summary disposition under MCR 2.116(C)(8) is tested on the pleadings alone; all factual allegations contained in the complaint must be accepted as true. *Id.*

### D. AMENDMENT OF THE COMPLAINT

Leave to amend a complaint should be freely given when justice so requires. MCR 2.118(A)(2). *Hakari v Ski Brule, Inc*, 230 Mich App 352, 355; 584 NW2d 345 (1998). This Court will reverse a trial court's decision on a motion to amend a complaint only where the trial court abused its discretion. *Id.*

### E. BREACH OF CONTRACT

In support of its motion for summary disposition of plaintiffs' first amended complaint, Wayne County attached the affidavit of Sawait Kanluen, M.D., Wayne County Medical Examiner. Therefore, because the parties and the trial court went beyond the pleadings with regard to this issue, we address this issue pursuant to MCR 2.116(C)(10). *W B Cenac Medical Service, PC v Michigan Physicians Mut Liability Co*, 174 Mich App 676, 681; 436 NW2d 430 (1989).

A motion for summary disposition brought under MCR 2.116(C)(10), based on the lack of a genuine issue of material fact, tests whether there is factual support for the claim. *Cenac, supra* at 681. In ruling on the motion, the trial court must consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties. *Id.* The opposing party must show that a genuine issue of material fact exists. *Id.* The opposing party may not rest upon mere allegations or denials in the pleadings but must, by affidavit or other documentary evidence, set forth specific facts showing the existence of a genuine issue for trial. *Id.* If the opposing party fails to make such a showing, summary disposition is appropriate. *Id.*

### III. GOVERNMENTAL IMMUNITY

#### A. INTRODUCTION

Plaintiffs argue (1) that the Wayne County Morgue constitutes a public hospital, of which William Dampier was a patient, so that the public hospital exception to immunity applies, (2) that a common-law exception to immunity exists for the mishandling of a decedent's remains, and (3) that Wayne County is not immune with respect to plaintiffs' state constitutional claim for violation of their property right in William Dampier's remains.[1] We address each possible exception below.

---

[1] In the interest of clarity, we note that plaintiffs' common-law claim for the mishandling of a decedent's remains is distinct from their claim for violation of a state constitutional property right in these remains. Plaintiffs argue that the former claim constitutes an exception to governmental immunity because the claim was recognized before the enactment of the governmental immunity statute, MCL 691.1407; MSA 3.996(107), while the latter claim, as a constitutional claim, is not subject to immunity at all. In

B. PUBLIC HOSPITAL EXCEPTION

MCL 691.1407; MSA 3.996(107) governs the application of governmental immunity from tort liability and provides:

> (1) Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

> \*    \*    \*

> (4) This act does not grant immunity to a governmental agency with respect to the ownership or operation of a hospital or county medical care facility or to the agents or employees of such hospital or county medical care facility. As used in this subsection:

> \*    \*    \*

> (b) "Hospital" means a facility offering inpatient, overnight care, and services for observation, diagnosis, and active treatment of an individual with a medical, surgical, obstetric, chronic, or rehabilitative condition requiring the daily direction or supervision of a physician. The term does not include a hospital owned or operated by the department of mental health or a hospital operated by the department of corrections.

Neither party disputes the characterization of the operation of the Wayne County Morgue as a governmental function. Plaintiffs argue that the Wayne

---

addition, plaintiffs argue that they possessed a federal constitutional property right in William Dampier's remains and that they should be permitted to bring a claim pursuant to 42 USC 1983, as will be discussed.

County Morgue constitutes a public hospital for the operation of which Wayne County is not entitled to immunity, pursuant to MCL 691.1407; MSA 3.996(107) We disagree.

The definition of public hospital provided in the statute controls. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996). Plaintiffs further argue that the Michigan Supreme Court, in *Bendford v Nat'l Life & Accident Ins Co*, 356 Mich 52, 60-62; 96 NW2d 113 (1959), determined that a deceased person undergoing an autopsy constitutes a patient of the medical examiner and that the autopsy constitutes the medical treatment of a patient. Plaintiffs have misconstrued the Court's holding in *Bendford*.

In *Bendford, id.* at 61-62, the Court determined that the testimony of the attending physician who conducted the autopsy on the plaintiff's decedent was privileged and, therefore, was inadmissible at trial, because the physician testified that he had treated the decedent during the twelve days preceding death and based his opinion regarding the cause of death not only on the autopsy results but also on records made in connection with the decedent's treatment before death, which records were indisputably privileged. The Court never directly addressed whether a decedent whose body had only been examined by a medical examiner for the purposes of conducting a postmortem examination qualified as a patient of the examiner and whether the examination constituted treatment.

In contrast, in a similar context involving the question of doctor-patient privilege, the Court, in *Swickard v Wayne Co Medical Examiner*, 438 Mich 536,

560-561; 475 NW2d 304 (1991), determined that information obtained from an autopsy was not privileged and therefore not exempt from disclosure under the Freedom of Information Act. *Id.* See also *Estate of Green v St Clair Co Rd Comm,* 175 Mich App 478, 489; 438 NW2d 630 (1989). There was no indication in *Swickard* that the plaintiffs sought to obtain any information regarding the treatment of the decedent other than that included in the autopsy report and no indication that the medical examiner had treated the decedent before his death. The Court stated, "Certainly, when a doctor performs an autopsy, the doctor is not prescribing treatment for the deceased; nor is the doctor performing surgery." *Swickard, supra* at 561. Thus, in light of *Swickard,* we hold that the morgue fails to qualify as a hospital for purposes of the public hospital exception to governmental immunity.

However, even if we were to accept plaintiffs' argument that the morgue offered inpatient, overnight care, and services for observation and diagnosis of William Dampier as an individual with a medical condition, plaintiffs have failed to establish that the remaining requirements set forth in the statute are satisfied. The statute states, "Hospital' means a facility offering inpatient, overnight care, and services for observation, diagnosis, *and* active treatment of an individual." MCL 691.1407(4)(b); MSA 3.996(107)(4)(b) (emphasis added).

> In construing a statute, the court should presume that every word has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. As far as possible, effect should be given to every phrase, clause, and word. Although fre-

quently misused and more readily departed from than other words, the literal meaning of the words "and" or "or" should be followed if their accurate reading does not render the sense dubious. [*Indenbaum v Michigan Bd of Medicine (After Remand)*, 213 Mich App 263, 272; 539 NW2d 574 (1995) (citations omitted).]

According to the Court in *Swickard, supra* at 561, "when a doctor performs an autopsy, the doctor is not prescribing *treatment* for the deceased" (emphasis added). The governmental immunity statute requires that, in order to constitute a hospital, a facility must offer services for the observation, diagnosis, *and* active *treatment* of an individual. MCL 691.1407(4)(b); MSA 3.996(107)(4)(b). Because, according to *Swickard*, a doctor performing an autopsy is not rendering treatment to the deceased, the Wayne County Morgue is not a facility offering services for the treatment of an individual. As such, the Wayne County Morgue is not a hospital within the meaning of the statute.

This interpretation is further supported by this Court's holding in *Green, supra* at 489, where the Court stated that the medical examiner's performance of an autopsy on Green did not render him a patient of the examiner. Because Wayne County allegedly took possession of William Dampier's remains for the purpose of performing an autopsy, William Dampier was not a patient of the Wayne County Medical Examiner. Accordingly, the Wayne County Morgue is not a facility offering inpatient care. MCL 691.1407(4)(b); MSA 3.996(107)(4)(b); *Indenbaum, supra* at 272.

Plaintiffs have also misconstrued the plain language of the statute regarding the requirement of daily direction or supervision of a physician. Plaintiffs argue that the *operation of the morgue* requires the daily direction or supervision of a physician. However, the statute states that it is the observation, diagnosis, and active treatment *of an individual,* and not the operation of the facility itself, that requires the daily direction or supervision of a physician. MCL 691.1407(4)(b); MSA 3.996(107)(4)(b). Because the morgue does not offer treatment to individuals, and because the individuals on whom autopsies are performed are not patients, the morgue is not a hospital.

In summary, and accepting as true all of plaintiffs' well-pleaded allegations and construing them in favor of plaintiffs, plaintiffs have failed to allege facts warranting the application of the public hospital exception to governmental immunity to plaintiffs' claims. MCL 691.1407; MSA 3.996(107); *Kowalski, supra* at 616.

### C. COMMON-LAW EXCEPTION

Plaintiffs argue that a common-law exception to governmental immunity exists for the mishandling of a decedent's remains. Plaintiffs contend that MCL 691.1407; MSA 3.996(107) has been construed to mean that all exceptions to governmental immunity that existed at common-law before July 1, 1965, survive the statutory enactment of governmental immunity. Further, plaintiffs argue that a common-law exception to governmental immunity for the mutilation of a dead body existed before July 1, 1965, and that this

exception survives the enactment of the immunity statute.

The last sentence of subsection 1 of § 7 of the governmental immunity statute, MCL 691.1407(1); MSA 3.996(107)(1), provides:

> Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

In accordance with this sentence, the Michigan Supreme Court has recognized a common-law trespass-nuisance exception to immunity. *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 148-149, 204-205, 209, 213; 422 NW2d 205 (1988). Plaintiffs argue that *Deeg v Detroit*, 345 Mich 371; 76 NW2d 16 (1956), establishes an additional common-law exception to immunity for the unlawful and intentional mutilation of a dead body and that this exception applies to plaintiffs' claims so that summary disposition for Wayne County was improper. While we agree that Michigan law does recognize an actionable claim for the mutilation of a dead body, such a claim is not viable here.

"Michigan jurisprudence recognizes a common law cause of action on behalf of the person or persons entitled to the possession, control, or burial of a dead body for the tort of interference with the right of burial of a deceased person without mutilation." *Tillman v Detroit Receiving Hosp*, 138 Mich App 683, 687; 360 NW2d 275 (1984). See also *Deeg*, *supra* at 375, *Nelson v Crawford*, 122 Mich 466, 470; 81 NW 335 (1899), overruled on other grounds *Daley v LaCroix*, 384 Mich 4; 179 NW2d 390 (1970), *Kelly-Nevils v Detroit*

*Receiving Hosp*, 207 Mich App 410; 526 NW2d 15 (1994), and *Larson v Chase*, 47 Minn 307, 310; 50 NW 238 (1891) (cited with approval in *Nelson, supra*).

Plaintiffs rely heavily on *Deeg, supra* at 375, in support of their claim. However, in *Deeg*, as well as in all of the cases cited, the plaintiff brought an action for the allegedly wrongful *dissection of, or removal of organs from, the body*. Specifically, in *Deeg*, the plaintiff, wife of the decedent, brought an action against the city of Detroit because the city had conducted an autopsy on, and had removed organs from, the body of her husband without her consent. *Id.* at 377. The Supreme Court recognized a claim on behalf of the plaintiff for the actions of the city, but also determined that her claim had not survived her death. *Id.* at 379.

Similarly, in *Kelly-Nevils*, *Tillman*, and *Larson*, the plaintiffs brought claims against the defendants for the wrongful mutilation of a dead body as a result of autopsies or organ harvesting conducted without the consent of the next of kin. While *Nelson, supra* at 470, did not deal with a claim based on the mutilation of a dead body, it did cite with approval *Larson, supra*, for the proposition that a plaintiff may recover damages for the mutilation of a dead body in which the plaintiff had a legal right. Thus, all of the Michigan cases that discuss this common-law claim involved the alleged evisceration or dismemberment of a dead body.

Accordingly, we hold that a cognizable claim for the mutilation of a dead body is not sufficiently broad to encompass a claim for its decomposition, which does not involve the active incision, dismemberment, or evisceration of the body, because "any exceptions

to [the] grant of immunity are [to be] narrowly construed." *Vargo v Sauer*, 215 Mich App 389, 395-396; 547 NW2d 40 (1996), rev'd on other grounds 457 Mich 49; 576 NW2d 656 (1998). Wayne County is therefore immune from plaintiffs' common-law claim.

### D. VIOLATION OF THE MICHIGAN CONSTITUTION

Plaintiffs' final claim in regard to Wayne County's immunity defense is that, pursuant to Const 1963, art 1, § 17, they have a constitutionally protected property right in William Dampier's body, that Wayne County violated that right by allegedly allowing the body to decompose, and that Wayne County is not entitled to immunity for a constitutional violation. Plaintiffs rely on *Whaley v Saginaw Co*, 941 F Supp 1483 (ED Mich, 1996) in support of their claim.

In *Whaley, id.* at 1486-1487, the plaintiffs argued, pursuant to 42 USC 1983, that they had been deprived of federal constitutional property rights in the corneas of their decedents because the corneas were removed without their consent pursuant to Michigan's Anatomical Gifts Act, MCL 333.10202; MSA 14.15 (10202), in violation of due process. The district court agreed, applying the holding the Sixth Circuit Court of Appeals had reached in an earlier stage of the proceedings, reported sub nom *Whaley v Tuscola Co*, 58 F3d 1111 (CA 6, 1995), that such a right existed, and then proceeded to determine that a genuine issue of material fact existed regarding whether the defendants removed the corneas without permission pursuant to department policy. Accordingly, the district court determined that its earlier grant of summary judgment for the defendants was improper. *Whaley, supra*, 941 F Supp 1493. We hold that the *Whaley*

decisions do not support plaintiffs' state constitutional claim.

Initially, we note that Wayne County argues that the Michigan Legislature has not enacted any enabling legislation similar to 42 USC 1983, and that, until such legislation is enacted, plaintiffs have no means by which to enforce Const 1963, art 1, §17. We disagree. This Court has previously determined that those provisions of the Michigan Constitution that protect individual rights do not "require implementing legislation in order to operate as a limitation on the exercise of governmental power." *Detroit Branch, NAACP v Dearborn*, 173 Mich App 602, 614; 434 NW2d 444 (1988).[2] Therefore, the lack of enabling legislation would not preclude plaintiffs' claim.

However, we hold that plaintiffs' constitutional claim fails because Michigan does not recognize a property right in a dead body. As plainly stated by this Court, "there is no property right in the next of kin to a dead body." *Tillman, supra* at 686-687, citing *Deeg, supra* at 375. Furthermore, this Court, in *Tillman* determined that the common-law right of burial of a deceased person without mutilation, discussed earlier, is not of constitutional dimension. *Id.* at 687.

Moreover, while they may be considered persuasive, the *Whaley* decisions are not dispositive of the claim at hand, because the *Whaley* decisions are federal court cases construing the federal constitution

---

[2] We note that the same is not true for Const 1963, art 1, § 2 in suits involving private party defendants. This Court, in *NAACP, supra* at 613, stated, "Article 1, Sec. 2 is the only provision in the Michigan Constitution's declaration of rights to impose an affirmative obligation on the Legislature for implementation by appropriate legislation" relative to *private* parties. However, because plaintiffs have sued Wayne County, this distinction is not at issue in the present case.

and are not binding precedent with respect to interpretations of the state constitution. Cf. *State Bd of Ed v Houghton Lake Community Schools*, 430 Mich 658, 675; 425 NW2d 80 (1988). Accordingly, because plaintiffs failed to allege the violation of a state constitutional right, the trial court's grant of summary disposition on this basis was proper.

### IV. FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED

#### A. INTRODUCTION

Plaintiffs assert that Wayne County erroneously argued (1) that it could not be sued for state constitutional violations, (2) that enabling legislation is required for plaintiffs to bring a claim for violation of a constitutional right, and (3) that plaintiffs failed to state a claim for the violation of the common-law right to the peaceful burial of William Dampier's body because, even if Michigan recognized such a claim, Wayne County is immune to it. Plaintiffs also argued that they had established that Wayne County acted pursuant to a custom or policy that resulted in the deprivation of their state constitutional rights. We address each of plaintiffs' arguments below.

#### B. ALLEGED STATE CONSTITUTIONAL VIOLATIONS

We have held above that the Michigan Constitution does not recognize a constitutional property interest in the body of a decedent. Because plaintiffs have failed to state a claim for violation of the Michigan Constitution, whether a county government may be sued for a constitutional violation is immaterial to a decision in this case. Therefore, this Court need not consider the issue. *State ex rel Saginaw Prosecuting*

*Attorney v Bobenal Investments, Inc*, 111 Mich App 16, 26; 314 NW2d 512 (1981).

### C. ENABLING LEGISLATION AS A PREREQUISITE FOR SUIT

We have held above that enabling legislation is not a prerequisite for bringing suit for violations of Const 1963, art 1, § 17, pursuant to *NAACP, supra* at 614.

### D. DEPRIVATION OF BODY OR BODY PARTS

We have held above that Michigan does not recognize a right of constitutional dimension in a dead body. Therefore, it is immaterial to a decision in this case whether Wayne County actually withheld William Dampier's body or body parts from plaintiffs.

### E. CUSTOM OR POLICY

To prove a state constitutional violation against a governmental defendant, in addition to proving the violation, a plaintiff must plead and prove facts to establish that the defendant acted pursuant to a governmental custom or policy. See *Johnson v Wayne Co*, 213 Mich App 143, 150, 162; 540 NW2d 66 (1995); *Marlin v Detroit (After Remand)*, 205 Mich App 335, 338; 517 NW2d 305 (1994). We have held above that no cognizable state constitutional violation occurred in this case. Therefore, whether Wayne County acted pursuant to a county custom or policy in handling William Dampier's remains is irrelevant to our decision.

### V. AMENDMENT OF COMPLAINT

MCR 2.118(A)(2) provides: "Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the

adverse party. Leave shall be freely given when justice so requires."

> A motion to amend ordinarily should be granted, and denied only for particularized reasons:
>
> ". . . such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ."
>
> To safeguard and implement the policy favoring amendment, this Court has directed that upon denial of a motion to amend "such exercise of discretion should be supported by specific findings as to *reasons* for the same." [*Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 656; 213 NW2d 134 (1973) (emphasis in original).]

"A court must specify one of the *Fyke* reasons in its denial, and a failure to do so constitutes error requiring a reversal unless such amendment would be futile." *Terhaar v Hoekwater*, 182 Mich App 747, 751; 452 NW2d 905 (1990).

Here, plaintiffs, first orally and then in writing, moved in the trial court to be permitted to file a second amended complaint to include a claim for violation of the Fourteenth Amendment of the United States Constitution brought pursuant to 42 USC 1983. The trial court denied these motions. However, neither at the conclusion of the hearing with respect to Wayne County's motion for summary disposition of the claims in plaintiffs' first amended complaint nor in its order did the trial court specify the reasons for denying plaintiffs' motion to file a second amended complaint alleging a violation of 42 USC 1983, except to say at the hearing: "I'm going to deny because when the Court of Appeals is going to end up decid-

ing this case, they can decide it all at once so that it doesn't go back and forth piece meal. So, let me formally deny that. You can put that in the order." Therefore, unless amendment of the complaint would have been futile, the trial court's denial of plaintiffs' motion was error requiring reversal. *Terhaar, supra* at 751.

The Fourteenth Amendment of the United States Constitution provides that "[no state shall] deprive any person of life, liberty, or property, without due process of law." US Const, Am XIV, § 1. To enforce this amendment, Congress also enacted 42 USC 1983. Federal court decisions construing federal law are highly persuasive precedent. *Auto Club Ins Ass'n v Frederick & Herrud, Inc (On Remand)*, 191 Mich App 471, 474; 479 NW2d 18 (1991), aff'd 443 Mich 358; 505 NW2d 820 (1993). Therefore, if the Fourteenth Amendment, as enabled by 42 USC 1983, recognizes a claim for the unconstitutional deprivation of property in the mishandling of a decedent's remains, amendment of plaintiffs' complaint would not have been futile, and the trial court's denial of plaintiffs' motion constituted error requiring reversal. *Terhaar, supra* at 751.

We hold that plaintiffs could have presented a claim that is cognizable under the Fourteenth Amendment of the United States Constitution if the trial court had allowed them to file a second amended complaint. In support of this potential claim, plaintiffs rely principally on *Whaley, supra*, 941 F Supp 1483. *Whaley* involved claims based on the removal of the plaintiffs' decedents' corneas without the plaintiffs' consent. In contrast, in the present case, no actual invasion of William Dampier's body occurred, and Wayne County did not prevent plaintiffs from

obtaining his body or any of its parts. Nonetheless, we hold that the discussions by the federal district court and the federal circuit court concerning the nature of the claim indicate that federal law would recognize a claim based on the mishandling of a decedent's remains as a result of which the remains decompose.[3]

---

[3] With regard to an issue of first impression utilizing Michigan law, the Sixth Circuit Court of Appeals, in *Whaley, supra*, 58 F3d 1115-1116, concluded, on the basis of *Deeg, supra* at 371, *Doxtator v Chicago & W M R Co*, 120 Mich 596, 597; 79 NW 922 (1899), and *Keyes v Konkel*, 119 Mich 550, 551; 78 NW 649 (1899), that Michigan does recognize a constitutionally protected (under the United States Constitution) property right in a dead body. The Sixth Circuit Court of Appeals held "that Michigan provides the next of kin with a constitutionally protected property interest in the dead body of a relative." *Whaley, supra*, 58 F3d 1116.

In reaching its decision, the Sixth Circuit Court of Appeals referred to its earlier decision in *Brotherton v Cleveland*, 923 F2d 477, 482 (CA 6, 1991), where the court, with regard to an issue of first impression concerning Ohio law, held that "the aggregate of rights granted by the state of Ohio to [the plaintiff] rises to the level of a 'legitimate claim of entitlement' in [the decedent's] body, including his corneas, protected by the due process clause of the fourteenth amendment." The court reached this decision despite the fact that Ohio avoided characterizing rights to control or possession of a dead body as sounding in property. *Id.* at 480, 482.

In deciding *Brotherton*, the Sixth Circuit Court of Appeals engaged in a general discussion of the concept of property, from the initial decisions of English courts in which the law did not recognize property rights in dead bodies, to the eventual understanding that " 'it is now the prevailing rule in England as well as in this country, that the right to bury the dead and preserve the remains is a quasi-right in property.' " *Id.* at 481, quoting *Spiegel v Evergreen Cemetery Co*, 117 NJL 90, 93; 186 A 585 (1936). In reaching its decision, the Sixth Circuit Court of Appeals stated that the denomination of the interest in the dead body by Ohio as property, quasi-property, or not property was irrelevant to its determination. *Brotherton, supra* at 481-482. The Sixth Circuit Court of Appeals relied on its analysis in *Brotherton*, in deciding *Whaley*. As in *Brotherton, supra* at 482, the *Whaley* court determined that the manner in which Michigan chooses to characterize this right in a dead body was not dispositive of its decision, and expressly stated that the district court erred in relying on this characterization to reach its decision. *Whaley, supra*, 58 F3d 1116-1117. Thus, the Sixth Circuit Court of Appeals and district courts have recognized a federal right in a dead body that is of constitutional dimension. Furthermore, the discussion of the nature and scope of the right, as set forth in

Here, accepting as true the factual allegations that plaintiffs would ostensibly have pleaded in their second amended complaint and any reasonable inferences or conclusions that can be drawn from the facts, we hold that plaintiffs would have stated a federal constitutional claim for violation of their property right in William Dampier's body if the trial court had permitted them to amend their complaint. When plaintiffs obtained possession of the body, it was badly decomposed and therefore damaged. It is also reasonable to infer from this fact that the body was not delivered to plaintiffs in the condition as it was when death came. *Simko, supra* at 654; *Doxtator v Chicago & W M R Co*, 120 Mich 596, 597; 79 NW 922 (1899). Thus, we hold that plaintiffs have alleged an interference with their federal constitutional property right, pursuant to the *Whaley* decisions.

However, interference with a constitutional property right is insufficient in itself to give rise to a claim

---

*Whaley* and *Brotherton* is sufficiently broad to encompass plaintiffs' claim that Wayne County violated their federal constitutional property right in allowing William Dampier's body to decompose. Neither the holding in *Brotherton* nor the holding in *Whaley* was limited to the removal of body parts, specifically corneas, from the body, or the actual withholding of possession of the body from the next of kin. Rather, these cases found a general property right in the dead body that was of constitutional dimension and that interference with or deprivation of this right amounted to a constitutional violation. *Whaley, supra,* 58 F3d 1115, and *Brotherton, supra* at 480, 482.

This is particularly true in light of the federal courts' reliance on Ohio and Michigan cases that, as construed by the federal courts, provide a right of action to the next of kin for damage to the body or interference with possession of the body as it is when death comes. *Whaley, supra,* 58 F3d 1115. As stated above, the Sixth Circuit Court of Appeals did not believe that the fine distinctions made by the Ohio and Michigan courts regarding the labels to be assigned this right were of any particular significance to its decision and stated that the rights of the next of kin in the body were at the "heart and soul of the common law understanding of 'property.'" *Id.*

for violation of the Fourteenth Amendment pursuant to 42 USC 1983. In addition, plaintiffs must also establish that the interference was committed "under color of state law." *Brotherton v Cleveland*, 923 F2d 477, 479 (CA 6, 1991). This requirement may be satisfied by establishing that defendants acted pursuant to governmental policy or custom. *Whaley, supra*, 941 F Supp 1492. "Such a custom or policy must be 'the moving force of the constitutional violation.' " *Id.* Therefore, if plaintiffs alleged facts that could be developed to establish that Wayne County acted pursuant to a policy or custom that consequently resulted in the decomposition of William Dampier's remains, then plaintiffs' potential claim would not have been clearly unenforceable as a matter of law and the trial court's denial of plaintiffs' motion to amend their complaint was improper. *Simko, supra* at 654; *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992); *Terhaar, supra* at 751.

In their second amended complaint, which plaintiffs attached to their motion to amend, plaintiffs alleged that human remains were improperly cared for and allowed to decompose and deteriorate and that morgue officials failed to take the necessary action to preserve and protect the last remains entrusted to their care during a heat wave in July, 1995, which lack of action led to the decomposition of these remains. Accepting these factual allegations as true, we hold that plaintiffs' claim was not clearly unenforceable as a matter of law. Additional factual development may have justified a right of recovery if plaintiffs were successful in proving that Wayne County acted pursuant to custom or policy when it allegedly allowed William Dampier's remains to

decompose. *Simko, supra* at 654. Thus, we hold that permitting plaintiffs to amend their complaint would not have been futile, so that the trial court's denial of plaintiffs' motion for leave to file a second amended complaint to assert a 42 USC 1983 claim was error requiring reversal. *Terhaar, supra* at 751.

In their second amended complaint, plaintiffs also allege that individual employees of Wayne County committed grossly negligent acts that resulted in the decomposition of William Dampier's remains. Plaintiffs did not name these employees in their complaint as defendants individually or in their official capacities. Thus, it appears that plaintiffs are seeking to hold Wayne County additionally liable under 42 USC 1983 for the actions of its employees pursuant to a theory of respondeat superior. *Whaley, supra,* 941 F Supp 1494.

To succeed in a 42 USC 1983 claim based on a theory of respondeat superior, plaintiffs must prove, in addition to proving deprivation of a constitutional property right, that the government's agents acted pursuant to official policy. *Whaley, supra,* 941 F Supp 1492. Where the allegedly unlawful policy is not itself unconstitutional, the negligence behind the deprivation is only indirectly a 'moving force' behind the deprivation and cannot provide a basis for a 42 USC 1983 suit unless plaintiffs demonstrate deliberate indifference to their rights. *Id.* at 1494. "The concept of deliberate indifference implies that defendants knew or should have known that they were doing something 'wrong' or 'unconstitutional.' " *Id.*

In the present case, the allegedly unlawful policy of negligently monitoring and administering the morgue is not itself unconstitutional. *Id.* Therefore, plaintiffs

must prove that Wayne County's employees acted with deliberate indifference to plaintiffs' rights. *Id.* We cannot find that Wayne County's employees acted with deliberate indifference to plaintiffs' constitutional rights.

In *Whaley*, the district court found that the defendant's agents could not have acted with deliberate indifference to the plaintiffs' constitutional rights because, at the time they did so, state law permitted them to remove the corneas from the plaintiffs' decedents without first obtaining consent. *Id.* The present case is quite similar. In particular, the decision of the Sixth Circuit Court of Appeals in *Whaley, supra,* 58 F3d 1111, was the first case to find, based on Michigan law, such a due process claim in the property right to a dead body. *Whaley, supra,* 941 F Supp 1493. The Sixth Circuit Court of Appeals decision was published July 12, 1995. *Whaley, supra,* 58 F3d 1111. William Dampier died on July 25, 1995. Thus, only fourteen days passed between the date of publication of the Sixth Circuit Court of Appeals opinion in *Whaley* that, for the first time, established, on the basis of Michigan law, a federal right of constitutional dimension in a dead body, and the date of William Dampier's death. We hold, therefore, that plaintiffs' constitutional rights in William Dampier's body were not clearly established at the time of Wayne County's alleged negligent acts. Therefore, Wayne County's agents could not have acted with deliberate indifference to these rights, because " 'the conclusion that [the constitutional rights alleged by plaintiffs] were not clearly established negates the proposition that the [defendants] acted with deliberate indifference.' " *Whaley, supra,* 941 F Supp 1494, quoting *Williamson*

*v Virginia Beach*, 786 F Supp 1238, 1264-1265 (ED Va, 1992), aff'd 991 F2d 793 (CA 4, 1993), and *Zwalesky v Manistee Co*, 749 F Supp 815, 820 (WD Mich, 1990). Accordingly, we find that no factual development regarding the actions of Wayne County's employees would establish a 42 USC 1983 claim based on respondeat superior on which relief could be granted. Accordingly, Wayne County would be entitled to summary disposition for claims based on respondeat superior. *Simko, supra* at 654.

### VI. BREACH OF CONTRACT

In their first amended complaint, plaintiffs alleged that Grace Hospital had entered into an oral contract with plaintiffs under which the hospital agreed to conduct an autopsy on William Dampier's remains and that the hospital thereafter delegated the performance of the contract to Wayne County. Plaintiffs alleged that Wayne County breached the terms of the contract by failing to perform any autopsy and by failing to care properly for William Dampier's remains.

Wayne County responded to plaintiffs' first amended complaint with a motion for summary disposition. Wayne County asserted that no contract existed between it and Grace Hospital and that it never agreed with Grace Hospital or plaintiffs to conduct an autopsy on William Dampier's remains. Rather, Wayne County asserted that it conducts autopsies pursuant to statute and only on the medical examiner's determination that an autopsy is necessary and that, furthermore, this decision is discretionary and therefore entitled to immunity.

In support of these assertions, Wayne County attached the affidavit of Sawait Kanluen, M.D., the

Chief Medical Examiner for Wayne County. In the affidavit, Dr. Kanluen swore to assertions that Wayne County's performance of autopsies is conducted pursuant to statute and on the decision of the examiner that an autopsy is necessary and that Wayne County did not enter into any contracts, oral or otherwise, with Grace Hospital to conduct autopsies.

Plaintiffs failed to respond to Wayne County's motion for summary disposition and did not argue this issue before the trial court. In failing to respond to Wayne County's motion, plaintiffs failed to set forth specific facts in opposition to Wayne County's evidence showing a genuine issue for trial. Because plaintiffs failed to make such a showing, summary disposition was appropriate. *Cenac, supra* at 681.

The trial court's grant of summary disposition for Wayne County with respect to plaintiffs' state law claims is affirmed. The trial court's denial of plaintiffs' motion to file a second amended complaint to assert a claim pursuant to 42 USC 1983 for violation of the plaintiffs' due process rights under the Fourteenth Amendment of the United States Constitution is reversed. The case is remanded, and on remand, the trial court shall permit plaintiffs to file such a second amended complaint. We do not retain jurisdiction.

Affirmed in part, reversed in part, and remanded.